IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOSEPH WILLIAM WOOD,

    Plaintiff,

v.                                                                                          Civil No. 5:12-cv-174
                                                                                         (Judge Stamp)

JIM RUBENSTEIN, MARVIN C. PLUMLEY,
THOMAS HARLAN, MICHAEL SMITH, JR.,
SHAWN SKIDMORE, TODD SCHELLER,
BRADLEY WARNER, LESTER THOMPSON,
ANDREW HINCHMAN, NURSE ON DUTY
JULY 31, 2012, TRISTEN TENNY, and
WEXFORD MEDICAL SOURCES,

    Defendants.

## **REPORT AND RECOMMENDATION**

### *I. INTRODUCTION*

On December 7, 2012, Plaintiff, an inmate in the West Virginia penal system, filed a civil rights complaint alleging excessive force against several of the named officer Defendants. Further, he alleges that the supervising officers let the incident occur, and that the nurses on duty failed to take pictures of the injuries. As relief, Plaintiff seeks a monetary judgment, transfer from his institution, and disciplinary action for the parties involved. All Defendants have filed a motion to dismiss and Plaintiff has been notified of his right to file responsive materials, which he has. The parties have since lodged responses and replies to the other's pleadings, and the motions are now ripe for this report and recommendation.

### *II. STANDARD OF REVIEW*

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept as true

all well-pleaded material factual allegations. *Advanced Health-Care Services, Inc. v. Radford Community Hosp.*, 910 F.2d 139, 143 (4th Cir. 1990). Moreover, the Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, although a complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). To survive dismissal for failure to state a claim, the complaint must raise a right to relief that is more than speculative. *Id*. In other words, the complaint must contain allegations that are "plausible" on their face, rather than merely "conceivable." *Id*. at 555, 570. A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

## III. DISCUSSION

The Court will group the parties for the sake of this report and recommendation because they have moved to dismiss the complaint on separate grounds. These two groups are the "medical" defendants and the "officer" defendants, and the Court will discuss the motions to dismiss with regard to each group in turn.

### A. The Medical Defendants

These Defendants have raised several grounds as to why the complaint should be dismissed. Defendants Tenney and Wexford contend that they should be dismissed because they had no direct contact with Plaintiff, because they are only supervisor and employer, respectively, and because

2

Plaintiff has not pled any official policy or custom of depriving constitutional rights. Thus, they argue that the Complaint must be dismissed for failing to state a claim. Further, the unknown nurse, through counsel for Tenney and Wexford, contends that she should be dismissed for not only failure to serve, but also because the only allegation against her is that she did not take pictures of the alleged injuries, and that this does not rise to a cognizable claim under § 1983.

As will be discussed more fully, *infra*, a plaintiff asserting a civil action under § 1983 must first show that a constitutional right has been violated. If a plaintiff makes this showing, then he must also show that the person that violated the right was acting under color of state law. Here, Plaintiff cannot make the first showing because the only allegation contained in the Complaint is that the nurse failed to take pictures of the injury, and that the other two Defendants were responsible for the nurse's actions, or lack thereof. There is no constitutional right to have pictures taken of an injury. *See e.g. Boykin v. Curry*, 2009 WL 152524 (M.D. Ga. Jan. 20, 2009); *Dennison v. O'Fallon*, 2007 WL 1593069 (D. Mo. Apr. 11, 2007). Thus, because Plaintiff has failed to allege any violation of a constitutionally protected right, or any deliberate indifference to his medical needs, *see Estelle v. Gamble*, 429 U.S. 97 (1976), the motion to dismiss by the medical defendants must be **GRANTED**.

**B. The Officer Defendants**

All of these Defendants are correctional officers involved in the allegations that excessive force was used against Plaintiff. The Defendants have all moved to dismiss the complaint solely on the ground that they are absolutely immune from suits in their official capacity. They argue that because they were acting within the scope of their employment, in uniform as correctional officers, then they can only be sued in their official capacity, and thus must be immune under the Eleventh Amendment to the United States Constitution. The Court finds that it must assume the role of

educator on this issue because Defendants' position goes directly against the purpose of § 1983, and because the distinction between individual and official capacity suits under § 1983 "apparently continues to confuse [the] lawyers" for these Defendants. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

*1. The Purpose and Requirements of § 1983*

The Fourteenth Amendment to the United States Constitution was passed by Congress on June 13, 1866, shortly after the end of the Civil War, and ratified on July 9, 1868. It was part of the Reconstruction Amendments, which were " intended to take away all possibility of oppression by law," which at the time of their passage was based purely on race and skin color. *Ex Parte Commonwealth of Virginia*, 100 U.S. 339, 345 (1879). The Fourteenth amendment was "ordained . . . to secure equal rights to all persons, and, to insure to all persons the enjoyment of such rights, power was given to Congress to enforce its provisions by appropriate legislation." *Id*. at 347.[1]

Congress quickly got to work on this legislation, passing several versions of the Civil Rights Act. One of the first pieces of legislation, Section 2 of the Act of 1866 and amended by Sections 17 and 18 of the Act of 1870, was a criminal punishment for anyone who, "under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." 18 U.S.C. § 242. This criminal provision was routinely used to indict judges, sheriffs, and election officials. *See e.g. Commonwealth*, *supra*; *Screws v. United States*, 325 U.S. 91 (1945); *United States v. Classic*, 313

---

[1] "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article." U.S. CONST. amend. XIV, sec. 5.

U.S. 299 (1941).

Congress also wanted to provide civil redress for constitutional wrongs committed by a state actor. Section 1 of the Civil Rights Act of 1871, now codified at 42 U.S.C. § 1983, which provides this remedy, was "subject to limited debate and was passed without amendment." *Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658, 665 (1978). Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. Thus, to maintain a cause of action under § 1983, a plaintiff must show (1) that a constitutionally or legally protected right has been violated, and (2) that the person who violated the right was acting under color of state law.

Whether a constitutional right is alleged to have been violated is usually clear, but the under color of law requirement has been subject to more debate. "As a general rule, 'a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.'" *Conner v. Donnelly*, 42 F.3d 220, 223 (4th Cir. 1994) (quoting *West v. Atkins*, 487 U.S. 42, 50 (1988); *see also Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 936 n.18 (1982) ("state employment is generally sufficient to render the defendant a state actor"). Thus, it is clear that no state law has to be in place that is the source of the constitutional violation. Rather, any person acting with a badge of authority given to them by virtue of their position with the state who violates a person's constitutional rights is subject to liability for the unconstitutional act. Based upon its history and application, then, § 1983 was clearly enacted for, and has been applied consistently

5

to, civil actions against officers, and most importantly to the instant case, to correctional officers who use excessive force against a prisoner in violation of the Eight Amendment. *See e.g. Hudson v. McMillian*, 503 U.S. 1 (1992); *Whitley v. Albers*, 475 U.S. 312 (1986); *Wilkins v. Gaddy*, 599 U.S. 34 (2010).

*2. The Difference Between Individual and Official Capacity*

"Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Graham*, 473 U.S. at 165 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 237-238 (1974)). "Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id*. at 165–66 (*quoting Monell v. New York City Dept. of Soc. Svcs.*, 436 U.S. 658, 690, n. 55 (1978)). In its simplest form, the question boils down to whose pockets a plaintiff is trying to reach into. A plaintiff seeking to sue a state actor in an individual capacity seeks to recover money from that individual's personal wealth. Conversely, a plaintiff seeking to sue an individual in an official capacity is trying to take money from the state treasury, which is generally prohibited by the Eleventh Amendment unless the constitutional violation is the result of some policy or custom of the state entity. *See Monell*, *supra*.

Just as the source of damages is different between individual and official capacity claims, so too is the burden of proof and available defenses. To establish an action against an official being sued in her individual capacity "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id*. (citing *Monroe v. Pape*, 365 U.S. 167 (1961)). In turn, a defendant may raise the affirmative defense of absolute or qualified immunity. *See e.g. Harlow v. Fitzgerald*, 457 U.S. 800 (1982). More specifically, state employed prison officials and officers may assert qualified immunity, *Procunier v. Navarette*, 434 U.S. 555 (1978), but a privately employed

6

correctional officer cannot. *Richardson v. McKnight*, 521 U.S. 399 (1997). As mentioned, a suit against a state actor in her official capacity must allege some policy or custom that caused the deprivation of the right. In turn, the "only immunities that can be claimed are forms of sovereign immunity . . . such as the Eleventh Amendment." *Graham*, 473 U.S. at 167.

3. *Application of These Principles to the Instant Case*

The concept is elementary, but as noted by the Supreme Court and as evidenced by the filings by these Defendants, it is one that continues to escape comprehension. Defendants contend that because the officers were in uniform and on duty, then they must have been acting in their official capacity. While Defendants are correct that a lawsuit instituted against an officer in her official capacity may run into an Eleventh Amendment bar, to proclaim that all suits against an officer on duty are official capacity suits would run contrary to the ills Congress intended to provide redress for in § 1983. In fact, the United States Supreme Court has rejected the very proposition advanced by Defendants.

In *Hafer v. Melo*, 502 U.S. 21 (1991), the petitioner argued that "§ 1983 liability turns not on the capacity in which state officials are sued, but on the capacity in which they acted when injuring the plaintiff." *Id*. at 27. As such, the petitioner argued, "state officials may not be held liable in their personal capacity for actions they take in their official capacity." *Id*. The Court, in a unanimous decision, found this proposition "both unpersuasive as an interpretation of § 1983 and foreclosed by [its] prior decisions." Specifically, the Court found that the proposition "ignores [its] holding that Congress enacted § 1983 'to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it.'" *Id*. at 28 (quoting *Scheuer v. Rhodes*, 416 U.S. 232,

243 (1974)). The Court went on to discuss the historical roots for its holding:

> [S]ince *Ex parte Young*, 209 U.S. 123 (1908), we said, "it has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law." *Scheuer*, *supra*, 416 U.S. at 237. While the doctrine of *Ex parte Young* does not apply where a plaintiff seeks damages from the public treasury, damages awards against individual defendants in federal courts "are a permissible remedy in some circumstances notwithstanding the fact that they hold public office." 416 U.S. at 238. That is, the Eleventh Amendment does not erect a barrier against suits to impose "individual and personal liability" on state officials under § 1983. *Ibid*.

*Id*. at 30–31 (internal citations altered). Thus, it is clear that Defendants' position has long been rejected. The only remaining question is whether Plaintiff has filed this action against Defendants in their individual or official capacity.

Plaintiff has submitted a form § 1983 Complaint given to prisoner plaintiffs by the Court, which asks for the defendants' names, positions, and places of employment. It also asks for a brief description of the allegations, and for the relief sought. Plaintiff's complaint alleges excessive force against the Defendants, in violation of the Eighth Amendment's protection against cruel and unusual punishment, and seeks monetary compensation, disciplinary action, and transfer from his institution. Nowhere does the Complaint state that the action is against the Defendants in their individual or official capacity. Plaintiff has filed a motion to amend his complaint to include that Defendants are being sued in their individual capacity, and to clear all doubt the Court has granted the motion to amend.

However, even if Plaintiff did not seek leave to amend his Complaint, it is important to note that a plaintiff need not expressly plead whether a defendant is being sued in her individual or official capacity. *See Biggs v. Meadows*, 66 F.3d 56, 58 (4th Cir. 1995). In adopting the view held

by the majority of circuits, the Fourth Circuit held that the district courts must look to the "substance of the complaint, the relief sought, and the course of proceedings to determine the nature of a plaintiff's claims." *Id*. The Fourth Circuit gave the district courts some factors to consider, including: (1) whether the complaint alleges a policy or custom, because those allegations are only relevant in an official capacity suit; (2) whether the complaint seeks compensatory or punitive damages, because those damages are not available in an official capacity suit; and (3) whether the defendant has asserted a qualified immunity defense, because that defense is only available in individual capacity suits. *Id*. at 61. Throughout this examination of the complaint, "the underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly." *Id*.

In considering these factors, the Court first notes that Plaintiff's complaint does not allege a policy or custom behind the deprivation of his constitutional rights. Further, although the complaint does not specify whether Plaintiff is seeking compensatory or punitive damages, he is seeking monetary damages from the Defendants. The only defense raised by Defendants is the Eleventh Amendment.[2] But, with the underlying inquiry being whether the Court can fairly ascertain Plaintiff's intention, the Court believes that Plaintiff's intention was to sue the officers in their individual capacities. Accordingly, because the Eleventh Amendment does not bar this action, these Defendants' motions to dismiss must be **DENIED**.

## *IV. CONCLUSION & RECOMMENDATION*

For the reasons set forth, the undersigned **RECOMMENDS** that the medical defendants' Motion to Dismiss (Doc. 18) be **GRANTED**. The undersigned further **RECOMMENDS** that the

---

[2] As noted, the Court believes that Defendants are confused about whether this suit can proceed at all because they contend that there is an absolute bar to suits against officers for acts performed during the course of their official duties. This might explain why the Eleventh Amendment was the only defense raised.

officer defendants' motions to dismiss (Docs. 21 & 31) be **DENIED**, and that these Defendants be **ORDERED** to answer the Complaint.

Any party may, within fourteen (14) days of receipt of this recommendation, file with the Clerk of the Court written objections identifying the portions of the recommendation objected to, and the basis for those objections. A copy of the objections should also be submitted to the District Judge of record. Failure to timely object to the recommendation will result in a waiver of the right to appeal. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

The Clerk is directed to send a copy of this report and recommendation, via certified mail return receipt requested, to the *pro se* Plaintiff at his last known address as reflected on the docket sheet, and to any counsel of record, as applicable.

DATED: July 1, 2013

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE