IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


JOSEPH WILLIAM WOOD,

      Plaintiff,

   v.                               Civil Action No. 5:12CV174
                                               (STAMP)

JIM RUBENSTEIN, MARVIN C. PLUMLEY,
CAPT. THOMAS HARLAN, LT. MICHAEL SMITH, JR.,
SGT. SHAWN SKIDMORE, CPL. TODD SCHELLER,
CPL. BRADLEY WARNER, LESTER THOMPSON,
ANDREW HINCHMAN, NURSE ON DUTY JULY 31, 2012
(P.M. SHIFT, NAME UNKNOWN), TRISTEN TENNEY
and WEXFORD MEDICAL SOURCES,

      Defendants.


**MEMORANDUM OPINION AND ORDER
GRANTING THE REMAINING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND
DENYING THE PLAINTIFF'S MOTION FOR
ADDITIONAL TIME TO COMPLETE DISCOVERY**


I.   Procedural History


On December 7, 2012, the pro se[1] plaintiff filed a complaint

against various prison officers and medical staff. Specifically,

he filed a civil rights action pursuant to 42 U.S.C. § 1983

alleging claims of excessive force[2] against defendants Jim

Rubenstein ("Rubenstein"), Marvin C. Plumley ("Plumley"), Capt.

---

[1]"Pro se" describes a person who represents himself in a court
proceeding without the assistance of a lawyer. Black's Law
Dictionary 1416 (10th ed. 2014).

[2]In his complaint, the plaintiff does not explicitly state
which of his rights has been violated. However, in a deposition of
the plaintiff, he states that his Eighth Amendment rights were
violated by the officer defendants. Accordingly, this Court will
construe the plaintiff's argument that his Eighth Amendment rights
were violated.

Thomas Harlan ("Harlan"), Lt. Michael Smith, Jr. ("Smith"), Sgt. Shawn Skidmore ("Skidmore"), Cpl. Todd Scheller ("Scheller"), Cpl. Bradley Warner ("Warner"), Lester Thompson ("Thompson"), and Andrew Hinchman ("Hinchman") (collectively the "officer defendants"). The plaintiff also claimed that his § 1983 rights were violated by Tristen Tenney, Wexford Medical Sources, and an unnamed nurse (collectively the "medical defendants"), for failing to take pictures of the injury that resulted from the excessive force. The plaintiff filed a motion to amend the complaint, which was granted, where he clarified that he is suing both the officer and the medical defendants in their individual capacities (ECF Nos. 37 and 59, respectively). In the plaintiff's request for relief, he seeks a monetary judgment, a transfer from his institution, and disciplinary action against the defendants involved.

The case was referred to United States Magistrate Judge John S. Kaull for initial review and recommendation pursuant to Local Rule of Prisoner Litigation Procedure 83.01 and 28 U.S.C. §§ 1915(e) and 1915A. After conducting a preliminary review of the complaint, Magistrate Judge Kaull issued an order to answer. In response to that order, the officer defendants filed two separate motions to dismiss and the medical defendants filed a motion to dismiss. The Court then issued three notices pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309, 310 (4th Cir. 1975), advising the plaintiff of his right to respond to the defendants' motions to

dismiss. ECF Nos. 23, 24, and 34, respectively. Subsequently, the plaintiff filed a motion for appointment of counsel, a motion to amend his complaint, motions for production of documents, and numerous responses to the defendants' motions to dismiss.

Thereafter, the magistrate judge issued a report and recommendation, recommending that the officer defendants' motions to dismiss be denied and the medical defendants' motion to dismiss be granted. ECF No. 58. The magistrate judge also issued an order regarding the plaintiff's pending motions, wherein he (1) denied the plaintiff's motion to appoint counsel, (2) granted the plaintiff's motion to amend the complaint, and (3) denied the plaintiff's motions for the production of documents. ECF No. 59. Thereafter, the plaintiff timely filed a single document containing both his objections to the order on his pending motions and the report and recommendation. This Court entered a memorandum opinion affirming and adopting the magistrate judges' report and recommendation. ECF No. 67.

The officer defendants have now filed a motion for summary judgment.[3] Initially, the plaintiff's response to the motion for summary judgment was due on September 15, 2014, and at that time, the plaintiff filed nothing. This Court then entered a <u>Roseboro</u>

---

[3]It should be noted that the officer defendants originally filed a motion for summary judgment on February 14, 2014. ECF No. 106. However, this Court denied it without prejudice and instead granted the plaintiff's first motion for additional time for discovery. ECF No. 122.

notice, giving the plaintiff thirty days to respond. ECF No. 137.

The plaintiff then responded on October 23, 2014. ECF No. 139.

Prior to the motion for summary judgment, the plaintiff filed a

motion for additional discovery on August 19, 2014. Two days

later, the officer defendants filed a response in opposition to the

motion for additional discovery. ECF Nos. 129 and 130,

respectively.[4] For the reasons set forth below, the plaintiff's

motion for additional time for discovery is denied, and the officer

defendants' motion for summary judgment is granted.

## II. <u>Facts</u>[5]

The plaintiff, while incarcerated at Huttonsville Correctional

Center, claims that on July 31, 2012 and on August 1, 2012, the

officer defendants used excessive force against him. Regarding the

July 31st incident, defendants Warner and Skidmore handcuffed the

plaintiff and began to escort him to his cell. The plaintiff then

attempted to remove his handcuffs. During the plaintiff's attempt

to escape, a brief physical altercation ensued among the plaintiff,

defendant Warner, and defendant Skidmore. After defendants Warner

and Skidmore regained control of the situation, the plaintiff then

began to make verbal threats against defendant Skidmore. The

---

[4]It should be noted that this Court has already granted the
plaintiff's three motions for additional time throughout this
matter. <u>See</u> ECF Nos. 96, 117, and 122.

[5]It should be noted that the facts presented are based on the
information provided in both the plaintiff's complaint and the
officer defendants' filings.

plaintiff then again attempted to pull away. This time, defendant Skidmore pressed the plaintiff against the wall in order to prevent the plaintiff from escaping and so as to regain control. Further, defendant Scheller was nearby, and witnessed the plaintiff's second attempt to escape as well as the results of that attempt.

As the escort continued, defendant Smith joined for added security. The plaintiff, for a third time, attempted to pull away from them, and an another altercation began. During that altercation, defendant Smith forced the plaintiff into a wrist lock. While this occurred, the plaintiff claims that defendant Scheller stood by and took no preventative measures to the abuse that the plaintiff alleges occurred. When the plaintiff was taken to the medical unit following those events, the medical staff noted that the plaintiff had some redness on the areas where the officers grabbed him. However, no serious injuries appeared to exist. After the plaintiff filed several grievances claiming that excessive force was used in the above incident, the West Virginia Division of Correction's ("DOC") Use of Force Committee determined that no excessive force was used.

Concerning the August 1, 2014 incident, defendant Hinchman began a cell search of the plaintiff's cell. The plaintiff was instructed to stay in a designated area while the search occurred, but he refused to comply. As a result, defendant Hinchman restrained the plaintiff until help arrived. When he was taken to

the medical unit, the plaintiff allegedly denied any medical needs.
After filing several grievances regarding this incident, the DOC's
Use of Force Committee again found that no excessive use of force
occurred.  Throughout both of these incidents, the plaintiff claims
that defendant Thompson, the Unit Manager at the DOC, failed to
address or investigate the claims he filed for excessive force.
Further, the plaintiff argues that defendant Harlan allegedly did
the same.  Despite the medical staff's determinations, the
plaintiff claims that the alleged assaults resulted in a deep
laceration on his left collar bone, bruised shoulders, bruised
wrists, and facial abrasions.  When the medical staff reviewed him
following the incidents, they allegedly refused to take pictures of
his injuries despite his requests.

Although originally named as defendants, the medical
defendants were dismissed in this Court's prior memorandum opinion
and order.  ECF No. 67.  Since then, the officer defendants have
filed a motion for summary judgment and the plaintiff filed a
motion for extension of time for discovery.  Those motions are
discussed below in the order presented.

A.  Officer Defendants' Motion for Summary Judgment

In their motion for summary judgment, the officer defendants
make three arguments.  First, the officer defendants argue that the
DOC, as a state agency, is entitled to Eleventh Amendment immunity,
and that it has not waived its immunity.  Because the officer

defendants are employees of DOC, the same immunity should apply to them. Second, the officer defendants argue that the plaintiff lacks sufficient evidence to show that excessive force was used. Further, they assert that the force used was reasonable and necessary. Finally, regarding the allegations that defendant Scheller stood by while the assault occurred, the officer defendants claim that no bystander liability exists here because the plaintiff failed to satisfy the requirements under Randall v. Prince George's County, Md., 302 F.3d 188, 203 (4th Cir. 2002).

In his response, the plaintiff first asserts that the officer defendants are wrong in allegedly claiming that the plaintiff had no open wound. The plaintiff points to exhibits that show a photograph of the plaintiff after the incidents and a copy of the relevant medical record. The plaintiff claims that those items show he had an open wound. Because the plaintiff claims he actually had an open wound, the officer defendants' arguments to the contrary are fraudulent. Second, the plaintiff claims that the time the incident took place and the times provided in the officer defendants' exhibits conflict with each other. Finally, the plaintiff asserts that although the officer defendants submitted affidavits swearing no video cameras existed near where the incident occurred, the plaintiff claims that cameras invisible to the naked eye may be present. For those reasons, the plaintiff

requests that this Court deny the officer defendants' motion for summary judgment.

The officer defendants filed a reply. First, the officer defendants argue that the plaintiff presents no genuine issues of material fact. Second, the officer defendants claim that the plaintiff failed to address any of the legal arguments they proffered in their motion for summary judgment. For those additional reasons, the officer defendants request that this Court grant their motion for summary judgment.

B. <u>Plaintiff's Letter Requesting Additional Time for Discovery</u>

In his request for additional time for discovery, the plaintiff claims that more time is needed because the officer defendants must allegedly still submit two verifications regarding the plaintiff's request for discovery responses. Further, the plaintiff argues that he needs more time overall to complete the discovery process and make the necessary findings to prevail over the officer defendants. In response, the officer defendants argue that this Court has provided the plaintiff with ample time. Specifically, they claim that because this Court already granted three motions for additional time in favor of the plaintiff, the plaintiff has had more than enough time to gather the necessary evidence. Further, the officer defendants provide documentation that indicates that after the plaintiff filed the letter asking for additional time for discovery, the officer defendants have since

submitted those verifications and provided proof of their submission. ECF Nos. 129 Exs. A and 136. Thus, no further discovery is needed. Accordingly, they request that the plaintiff's motion be denied. The plaintiff did not file a reply.

## III.  <u>Applicable Law</u>

Under Rule 56(c) of the Federal Rules of Civil Procedure,

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1095 (1992) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in <u>Anderson</u>, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials

of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Supreme Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV. <u>Discussion</u>

At issue in this memorandum opinion and order are the officer defendants' motion for summary judgment and the plaintiff's motion for an extension of time for discovery. Those motions are discussed below.

### A. <u>Officer Defendants' Motion for Summary Judgment</u>

As discussed earlier, the officer defendants make three arguments. First, the officer defendants argue that the DOC, as a state agency, is entitled to Eleventh Amendment immunity and that it has not waived its immunity. Because the officer defendants are employees of the DOC, the same immunity should apply to them. Second, the officer defendants argue that the plaintiff lacks sufficient evidence to show that excessive force was used. Finally, regarding the allegations that defendant Scheller stood by while the assault occurred, the officer defendants claim that no bystander liability exists here.

In his response, the plaintiff first asserts that the officer defendants are wrong in allegedly claiming that the plaintiff had no open wound. Second, the plaintiff claims that the time the incident took place and the times provided in the officer defendants' exhibits conflict with each other. Finally, the plaintiff asserts that although the officer defendants submitted affidavits swearing no video cameras existed near where the incident occurred, the plaintiff claims that cameras invisible to

the naked eye may be present.  For those reasons, the plaintiff requests that this Court deny the officer defendants' motion for summary judgment.

The United States Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982); <u>see</u> <u>Pritchett v. Alford</u>, 973 F.2d 307, 312 (4th Cir. 1992).  "Qualified immunity protects law enforcement officers from liability for 'bad guesses in gray areas' and ensures that they will be held liable only for violating bright-line rules." <u>Hill v. Crum</u>, 727 F.3d 312, 321 (4th Cir. 2013) (citing <u>Braun v. Maynard</u>, 652 F.3d 557, 560 (4th Cir. 2011).  The defense of qualified immunity is available only to an official sued in his individual or personal capacity, and not to an official sued in his official capacity.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-68 (1985).

Under <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001), an analysis of a qualified immunity defense requires a two-part inquiry.  The first question is whether the facts alleged, when viewed in the light most favorable to the injured party, "show the officer's conduct violated a constitutional right." <u>Id.</u>  If the facts alleged fail to make this showing, the inquiry is at an end, and

12

the official is entitled to summary judgment. _Id._ If, however, the facts alleged do show a constitutional injury, the second question is whether the constitutional right was clearly established at the time of the violation. _Id._ Accordingly, qualified immunity is abrogated only upon a showing that the officer's conduct violated a constitutional right and that such right was clearly established at the time the conduct occurred. _Id._; _Hill_, 737 F.3d at 321. To determine whether a right is "clearly established in a qualified immunity case, 'the contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right.'" _Hill_, 727 F.3d at 321 (quoting _Wilson v. Layne_, 526 U.S. 603, 615 (1999)).

    1.  Defendant Warner

    In the complaint, the plaintiff claims that defendant Warner, in his individual capacity, used excessive force when he allegedly threw the plaintiff on the ground and yelled at him.

    Regarding claims of excessive force, the Supreme Court of the United States extended the "application of the Eighth Amendment's prohibition against 'cruel and unusual punishments' to the treatment of prisoners by prison officials." _Hill_, 727 F.3d at 317. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." _Hudson v. McMillian_, 503 U.S. 1, 9 (1992). Thus, the

13

Eighth Amendment forbids the "unnecessary and wanton infliction of pain." <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986) (internal citations omitted). In an excessive force claim, the key inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Hudson</u>, 503 U.S. at 7. Further, it is the nature of the force, not the extent of the injury, that serves as the relevant inquiry. <u>Wilkins v. Gaddy</u>, 559 U.S. 34 (2010). The burden lies on the inmate to prove that the prison official acted "maliciously and sadistically to cause harm." <u>Whitley</u>, 475 U.S. at 320-21 (1986).

However, "not every malevolent touch by a prison guard gives rise to a federal cause of action." <u>Wilkins</u>, 559 U.S. at 37-38 (quoting <u>Hudson</u>, 503 U.S. at 9). Therefore, "an inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." <u>Wilkins</u>, 559 U.S. at 38 (quoting <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Under the inquiry provided in <u>Wilkins</u>, defendant Warner applied force against the plaintiff in good faith in order to regain control of the situation. The record shows that during the July 31st incident, the plaintiff attempted on approximately three occasions to pull away from defendant Warner. In response, defendant Warner proceeded to use a "guided takedown" in order to regain control of the situation. ECF No. 133 Ex. P. The Use of

Force Committee reviewed the incident and again found that the amount of force used in the situation failed to reach an excessive level. However, the plaintiff offers no proof that defendant Warner sadistically or maliciously used force against him for bad faith reasons.

Indeed, in his response, the plaintiff baldly asserts that cameras invisible to the naked eye may have footage that disproves the defendant's use of force in good faith. The plaintiff fails to proffer any footage or witnesses that demonstrate facts to the contrary or that the force used was excessive. Further, in his deposition, the plaintiff claims that the following items of evidence show that the force used was excessive: "video[s], the paperwork, . . . disciplinary hearings, [and] incident reports." ECF No. 133 Ex. A. Those items of potential evidence, however, do not create any genuine issues of material fact. First, regarding the video, other than the plaintiff's bald assertions that secret cameras exist, he proffers no actual video footage to this Court. In addition, the officer defendants provide three affidavits sworn by prison staff responsible for installation and maintenance of the video cameras. All three of them swore that no cameras existed in the areas where the incidents occurred. ECF No. 133 Exs. CC, DD, and EE. Second, the plaintiff's claim that the times on the incident reports differ with each other is equally lacking. The incident report that the plaintiff points to was the incident

report of the medical unit, which appears to indicate the time that the medical unit conducted a physical on the plaintiff, not the time of the altercations. However, the incident reports filed by the officer defendants indicate that the July 31st incident occurred approximately between 2110 and 2135 hours. This slight variance in time is immaterial and thus creates no genuine issues of material fact. Finally, the other reports filed all indicate that the plaintiff attempted multiple times to escape the custody of the officer defendants, and that the officer defendants, including defendant Warner, appropriately acted. Thus, the plaintiff's arguments neither create genuine issues of material fact nor demonstrate any violation of his Eighth Amendment rights.

Accordingly, defendant Warner used such force that fails to amount to a violation of the plaintiff's Eighth Amendment rights. The nature of the force used in the situation fails to qualify as excessive. Therefore, qualified immunity applies to defendant Warner.

2. <u>Defendant Skidmore</u>

Regarding defendant Skidmore, the plaintiff claims that defendant Skidmore, in conjunction with defendant Warner, used excessive force against him. Specifically, the plaintiff asserts that defendant Skidmore, acting in his individual capacity, helped defendant Warner shove him with "ill intent and unnecessary force." Then, defendant Skidmore allegedly forced the plaintiff into a

doorframe while cuffed which resulted in a deep laceration on the plaintiff's collarbone.  Finally, the plaintiff argues that defendant Skidmore then stomped on his hands.

Similar to the situation involving defendant Warner, defendant Skidmore did not use excessive force such that he violated the plaintiff's Eighth Amendment rights.  As the facts show, the plaintiff attempted to remove his cuffs and pull away from defendant Skidmore.  After gaining control over the plaintiff the first time he attempted to pull away, the plaintiff verbally threatened defendant Skidmore.  Specifically, he threatened to kill defendant Skidmore.  Following his threats, the plaintiff again attempted to pull away.  Defendant Skidmore then forced him against the wall in order to regain control of the situation.  Looking at the nature of the force used and the reasons why defendant Skidmore implemented such force, no evidence exists that defendant Skidmore maliciously or sadistically acted to harm the plaintiff.  Rather, the plaintiff repeatedly attempted to free himself from the custody of defendant Skidmore and then proceeded to threaten him.  In order to prevent the plaintiff from escaping, defendant Skidmore was forced to act, and the nature of the force used aligns with the plaintiff's actions that spurred the use of force.  Further, the plaintiff again offers no evidence that demonstrates that he either did not attempt to pull away or that defendant Skidmore sadistically used force.  The plaintiff only provides the same

arguments and evidence that he provided concerning defendant Warner, which is essentially nothing. The plaintiff has failed to satisfy his burden. Accordingly, defendant Skidmore did not use excessive force and thereby violate the plaintiff's Eighth Amendment rights. Thus, qualified immunity applies to defendant Skidmore.

　　　3.　<u>Defendant Scheller</u>

　　　The plaintiff claims that defendant Scheller stood by while the plaintiff was assaulted on July 31st. Specifically, the plaintiff asserts that defendant Scheller observed the events that occurred but took no preventative action while the other prison officials harmed the plaintiff. Because of the defendant's omission, the plaintiff claims that his Eighth Amendment rights were violated by defendant Scheller in his individual capacity.

　　　A law officer maintains a duty to "uphold the law and protect the public from illegal acts, regardless of who commits them." <u>Randall v. Prince George's County, Md.</u>, 302 F.3d 188, 203 (4th Cir. 2002). Accordingly, an officer may be liable under a theory of bystander liability. That would potentially occur when "a bystanding officer (1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act," meaning that he may "be deemed an accomplice and treated accordingly." <u>Id.</u> at 203.

Although the plaintiff does not explicitly assert that defendant Scheller violated his Eighth Amendment rights under a theory of bystander liability, the Court construes his argument as such. Nonetheless, the first requirement is not satisfied. The facts indicate that defendant Scheller witnessed the brief altercation that ensued when the plaintiff attempted to flee for a second time. The plaintiff claims that because Scheller was in a position to act and failed to prevent the plaintiff's alleged assault, defendant Scheller is liable for violating the plaintiff's Eighth Amendment rights. However, this Court disagrees with the plaintiff. This Court already determined that the force used by defendants Skidmore and Warner failed to rise to the level of excessive. Because the nature of the force used was not excessive, no illegal act occurred for defendant Scheller to prevent. Accordingly, no bystander liability exists regarding defendant Scheller and thus, no violation of the plaintiff's rights occurred. Therefore, qualified immunity applies to defendant Scheller.

4. <u>Defendant Smith</u>

Concerning defendant Smith, the plaintiff claims that he used excessive force. Specifically, the plaintiff states that defendant Smith joined in the escorting of the plaintiff. The plaintiff then argues that defendant Smith slammed him to the ground and pressed his face hard against the floor. The plaintiff asserts that this

amounted to excessive force and thus, his Eighth Amendment rights were violated.

As stated earlier, not every "touch by a prison guard gives rise to a federal cause of action." Wilkins, 559 U.S. at 37-38 (quoting Hudson, 503 U.S. at 9). According to the record before this Court, defendant Smith joined in the escorting of the plaintiff after his second attempt at escaping. When the plaintiff attempted to pull away a third time, defendant Smith placed him in a wrist lock. ECF No. 133 Exs. K and P. The plaintiff provides no evidence to the contrary. Instead, he only claims in his deposition that he will use video, incident reports, and other filings, the same that this Court mentioned earlier. Looking at the facts of this case and those items, defendant Smith did not maliciously or sadistically use force against the plaintiff. Rather, the plaintiff failed to cooperate and instead tried for a third time to flee. Some amount of force, here a wrist lock, was necessary to prevent the plaintiff from fleeing and to reestablish order. Accordingly, the nature of the force used was appropriate and was used to regain control of the plaintiff and the situation, demonstrating that defendant Smith acted in good faith. Therefore, this Court finds that defendant Smith did not use excessive force, and thus, the plaintiff's Eighth Amendment rights were not violated. Because of that, qualified immunity applies to defendant Smith.

5. <u>Defendant Hinchman</u>

Concerning defendant Hinchman, the plaintiff claims that defendant Hinchman, in his individual capacity, used excessive force on August 1, 2012. Specifically, the plaintiff asserts that while his cell was searched, defendant Hinchman acted maliciously towards him. Further, he claims that defendant Hinchman then shoved him and slammed his face into the wall, thus using excessive force.

As discussed earlier, a claim of excessive force may result in a violation of an inmate's Eighth Amendment rights. <u>Hill</u>, 727 F.3d at 317. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." <u>Hudson</u>, 503 U.S. at 9. Thus, the Eighth Amendment forbids the "unnecessary and wanton infliction of pain." <u>Whitley</u>, 475 U.S. at 319 (internal citations omitted).

The facts in this civil action indicate that defendant Hinchman did not maliciously or sadistically use force against the plaintiff. Rather, defendant Hinchman used an appropriate amount of force when the plaintiff failed to comply with defendant Hinchman's requests. In particular, defendant Hinchman ordered the plaintiff to stand in a designated area and in a certain manner while defendant Hinchman conducted the search. However, the plaintiff instead moved towards the cell in an attempt to intimidate defendant Hinchman. Further, when defendant Hinchman

attempted to escort the plaintiff black into the appropriate location, the plaintiff tried to pull away. In order to regain control of the situation, defendant Hinchman had to physically restrain the plaintiff. Here, the nature of the force used by defendant Hinchman was appropriate in the circumstances and was used in good faith in order to restrain the noncompliant plaintiff. This conclusion is further supported by the findings of the DOC's Use of Force Committee. ECF No. 133 Ex. Q. Similar to the claims against the other officer defendants, the plaintiff claims that his evidence of video footage, the incident reports, and other associated filings will refute the officer defendants' arguments. However, as is the case for the other officer defendants discussed above, the plaintiff proffers no video footage that demonstrates excessive force was used against him. Further, no evidence exists that cameras were in place in the areas where the incidents occurred, and the officer defendants provide three affidavits that swear to this fact. Finally, the incident reports and the other filings associated with them demonstrate that the plaintiff failed to comply with the requests made and instead attempted to flee. Accordingly, the plaintiff has failed to demonstrate that any genuine issues of material fact exist.

For those reasons, defendant Hinchman did not maliciously or sadistically use force against the plaintiff. Thus, he did not use excessive force against the plaintiff. Accordingly, defendant

Hinchman did not violate the plaintiff's Eighth Amendment rights. Thus, because no violation occurred, qualified immunity applies to defendant Hinchman.

    6.  <u>Defendant Rubenstein</u>

    The plaintiff next claims that defendant Rubenstein, the Commissioner of the DOC, failed to properly investigate his grievances and the assault he alleges occurred. ECF No. 133 Ex. A. The plaintiff alleges that defendant Rubenstein acted in his individual capacity when committing this alleged violation. As provided above, the plaintiff must demonstrate a constitutional right that defendant Rubenstein violated. Here, this Court construes the plaintiff's argument as defendant Rubenstein violated his Eighth Amendment rights through deliberate indifference either directly or under a theory of supervisory liability.

    Deliberate indifference on the part of prison officials to a specific known risk of harm does state an Eighth Amendment claim. <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994) ("[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety."). However, not every injury suffered by an inmate at the hands of other inmates or officials translates into constitutional liability for the prison officials responsible for the plaintiff's safety. <u>Id.</u> at 834. In addition, supervisory

liability may also exist under the deliberate indifference standard. Supervisory law officers have an obligation "to insure that his subordinates act within the law." Randall v. Prince George's County, Md., 302 F.3d 188, 203 (4th Cir. 2002) (internal citations omitted). Further, the supervisor has the following responsibility:

> Although such a supervisor may not prevent all illegal acts by his subordinates, he is obligated, when on notice of a subordinate's tendency to act outside the law, to take steps to prevent such activity. If a supervisory law officer is deliberately indifferent to that responsibility, he then bears some culpability for illegal conduct by his subordinates, and he may be held vicariously liable for their illegal acts.

Id. at 203 (citing Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994)). In a § 1983 claim, supervisory liability may exist so long as a the plaintiff can establish three elements:

> "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."

Randall, 302 F.3d at 206 (quoting Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994)).

The plaintiff offers no facts that show how defendant Rubenstein violated his Eighth Amendment rights either directly or under a theory of supervisory liability. The record indicates that

the DOC and its Use of Force Committee gathered and reviewed the plaintiff's grievances for both incidents. No facts exist to show that defendant Rubenstein in any way failed to investigate the plaintiff's grievances. Further, as demonstrated above, the prison officials that allegedly assaulted the plaintiff did not use excessive force. This means that the plaintiff's Eighth Amendment rights were not violated by the prison officials that defendant Rubenstein oversees. Because the officials are not liable for any violation of the plaintiff's rights, then defendant Rubenstein cannot be liable because a violation failed to occur. The plaintiff, who bears the burden of satisfying the elements under Randall and Shaw, proffers no evidence other than his own claims and allegations. This is insufficient to satisfy the requirements set forth above. Accordingly, this Court finds that defendant Rubenstein did not violate the plaintiff's Eighth Amendment rights. Therefore, qualified immunity applies to defendant Rubenstein.

7. Defendant Plumley

Next, the plaintiff claims that defendant Plumley, acting in his individual capacity, denied his grievances without properly investigating them. ECF No. 133 Ex. A. This Court again finds that qualified immunity applies. Nothing in the record indicates that defendant Plumley failed to properly investigate the plaintiff's grievances, or acted with deliberate indifference towards an excessive risk that the plaintiff faced. The "risk"

25

that plaintiff identifies, here the risk of harm by prison officials, only occurred due to the plaintiff's failure to comply and his attempts at escape. Namely, the plaintiff attempted to escape from the custody of the officials three times and then failed to comply with the officer defendants' requests to stop. Keeping this in mind, the grievances and complaints that the plaintiff filed were reviewed by the DOC and its Use of Force Committee. Again, nothing in the record shows either a deliberate indifference towards serious risks of harm or that the grievance review process was improperly conducted. Accordingly, this Court finds that no violation of the plaintiff's rights occurred. Therefore, qualified immunity applies to defendant Plumley.

8. <u>Defendant Thompson</u>

The plaintiff claims that defendant Thompson, as Unit Manager of DOC and acting in his individual capacity, should have properly looked into the grievances and the record of the assault. ECF Nos. 1 and 133 Ex. A. Thus, it appears that the plaintiff claims that defendant Thompson violated the plaintiff's Eighth Amendment rights either directly or under a theory of supervisory liability.

Similar to this Court's decision regarding defendant Rubenstein, qualified immunity also applies to defendant Thompson. The plaintiff offers no facts to show how defendant Thompson violated his Eighth Amendment rights by acting with deliberate indifference towards any alleged dangers that the plaintiff faced.

Further, because the prison officials that the plaintiff alleges assaulted him did not use excessive force, no liability exists regarding defendant Thompson's role as a supervisor. Because of this, the plaintiff fails to satisfy the first part of the qualified immunity inquiry and the requirements under <u>Randall</u>. Accordingly, this Court finds that qualified immunity applies to defendant Thompson.

    9.   <u>Defendant Harlan</u>

The plaintiff next argues that defendant Harlan, as Shift-Supervisor and acting in his individual capacity, should have brought "order to the situation" after the plaintiff filed his grievances, such as reprimanding the officers involved in the assaults. ECF No. 1. Further, he claims that defendant Harlan "aided and abetted" the situation when "he made the decision to neglect the issues of excessive force used by his officers." <u>Id.</u> Thus, the plaintiff seems to claim that defendant Harlan failed to properly examine the grievances the plaintiff filed and take appropriate action. Because of that, defendant Harlan allegedly violated the plaintiff's Eighth Amendment rights either directly or under a theory of supervisory liability.

This Court again finds that qualified immunity applies to defendant Harlan. The plaintiff again fails to provide any facts about how defendant Harlan directly violated his rights. Further, because the prison officials that the plaintiff alleges assaulted

him did not use excessive force, no liability exists regarding defendant Harlan's role as supervisor. Other than his own allegations and claims, the plaintiff offers no evidence of how defendant Harlan violated his rights, either directly or under a theory of supervisory liability. Based on the record before this Court, defendant Harlan did not violate the plaintiff's Eighth Amendment rights. Accordingly, this Court finds that qualified immunity applies to defendant Harlan.

B.  Plaintiff's Letter Requesting Additional Time for Discovery

In his request for additional time for discovery, the plaintiff claims that more time is needed because the officer defendants must allegedly still submit two verifications regarding the plaintiff's request for discovery responses. Further, the plaintiff argues that he needs more time overall to complete the discovery process and find the necessary evidence to prevail over the officer defendants. In response, the officer defendants argue that this Court has provided the plaintiff with ample time for discovery. Specifically, they claim that because this Court already granted three motions for additional time in favor of the plaintiff, the plaintiff has had more than enough time to gather the necessary evidence. Further, the officer defendants provide documentation that indicates that after the plaintiff filed the letter asking for additional time for discovery, the officer defendants have since submitted those verifications and provided

proof of their submission. ECF Nos. 129 Ex. A and 136. Thus, no further discovery is needed. Accordingly, they request that the plaintiff's motion be denied. The plaintiff did not file a reply.

This Court agrees with the officer defendants for three reasons. First, as indicated earlier, this Court granted the plaintiff's three prior motions for extensions of time. The parties have had more than an ample amount of time to complete discovery. Second, this Court has determined that qualified immunity applies to all of the officer defendants in this civil action. Because of that, the officer defendants' motion for summary judgment is granted. Therefore, any extension of discovery serves no purpose at this stage. Finally, the record indicates that no pending interrogatories or responses remain. It appears that the plaintiff's letter requesting additional time was filed the same day the officer defendants' responded with the requested verifications. Thus, the relief sought in that motion concerning any responses or verifications has been satisfied. For those three reasons, the plaintiff's motion for an extension of time to complete discovery is denied.

## V. <u>Conclusion</u>

For the reasons set forth above, the officer defendants' motion for summary judgment is GRANTED. Accordingly, the plaintiff's motion for an extension of discovery is DENIED.

Should the petitioner choose to appeal the judgment of this Court to the United States Court of Appeals for the Fourth Circuit on the issues to which objection was made, he is ADVISED that he must file a notice of appeal with the Clerk of this Court within 30 days after the date of the entry of this order.

It is further ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to the pro se plaintiff and to counsel of record herein. Because the officer defendants are the only remaining defendants in this civil action, the Clerk is DIRECTED to enter judgment on this matter pursuant to Federal Rule of Civil Procedure 58.

DATED:  December 9, 2014

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE